We'll now move to case number 7, United States v. Jay'von Fleming. Case number 18-2728. We'll begin, Mr. Maciejolik, with you. Good morning, Your Honors. I'm Mark Maciejolik. Mr. Desmond, S.C., I represent the appellant, Jay'von Fleming, counsel. May it please the Court. When I first met Jay'von Fleming, I took him to be about 40 years old-ish. It turned out he was about 25. When he got sentenced, he had a massive scar tissue that was still oozing blood from the self-injury that he inflicted on himself. Numerous suicide attempts while this case was pending. Judge Peterson sentenced Mr. Fleming to a term of 168 months, followed by 84 months. That was on a bank robbery and on a 924C brandishing of a firearm in connection with that bank robbery. The issue that Mr. Fleming has raised on appeal today concerns stipulated conduct. There were two bank robberies in this case. One occurred in Stoughton, Wisconsin. Mr. Fleming and his co-defendant, Kenny Fridge, were captured after a high-speed chase where Mr. Fridge was driving. After they were captured and in jail, Mr. Fridge was interviewed and Mr. Fleming was interviewed. They both admitted to their involvement in the Stoughton bank robbery. Mr. Fridge was questioned about a bank robbery that took place in Portage, Wisconsin sometime prior to the Stoughton bank robbery. During the course of being interviewed in the jail, Mr. Fridge mentioned, after the detective, I believe the order was, the detective inquired about the unusual firearms that Mr. Fridge and Mr. Fleming had during the Stoughton bank robbery. Following up to that, asked what was used in the Portage robbery. Mr. Fridge commented almost offhandedly, there was a recording of this, that a Glock 40 unloaded. We objected to that, the enhancement of Mr. Fleming's guideline range during sentencing on the basis that there was insufficient evidence to show that a real firearm had been used during the Portage robbery. And it made a difference because Mr. Fleming's advisory guideline range would have been 87 to 108 months rather than 135 to 168 months, which was the range that the district court used. In ruling on our objection, and after we made the objection, the United States did nothing. They didn't write a single sentence in opposition to the objection Mr. Fleming made. The district court pointed out that Mr. Fridge said that the firearm was real, which is not accurate. Mr. Fridge never said that and he wasn't asked about it. And second, the district court ruled that Mr. Fridge was particularly motivated to object to the nature of that firearm in the stipulated conduct because it would affect him too in sentencing. I think that's also, and this just occurred to me this morning, I think that's also probably not accurate. And I encourage you to ask Mr. Anderson about it because I don't know what Mr. Fridge's guidelines calculation was because I don't get to see his pre-sentence report. But it appears to me Mr. Fridge was a career offender under the guidelines, which would certainly dissipate his motivation to object to an enhancement that would apply under the regular guideline regime. And he'd also lose, or excuse me, at least risk losing acceptance and responsibility if he reversed himself in that proceeding. And those were the two bases for the district court to decide that this was in fact a real firearm. I tried to be careful in framing the objection. Sorry, I don't know where the feedback's coming from. I tried to be careful in framing the objection to not take on a burden of proof. The government seems to suggest in its brief that we're trying to prove that this was a facsimile firearm by reference to Airsoft and things like that. It was more just to illustrate that there certainly are those types of firearms or firearm facsimiles available. That was at the earlier robbery? Correct, the earlier robbery. The evidence of the firearm consists, Your Honor, of a somewhat grainy video that shows an object that's consistent with a firearm. But it also shows Mr. Fleming, or presumably Mr. Fleming, holding it pointed back at himself in a way that someone would not usually handle a firearm. And one of the witnesses in the bank told one of the investigating officers that the firearm was so large he thought it was perhaps a fake. And the investigating, I think it was a detective, produced his Smith & Wesson, I think it was a .357, and said, was it even bigger than this firearm? And he said, oh yes, it was. I'm paraphrasing here, but it was on both sides. So is there some question of whether or not that was an armed robbery? No question that it was an armed robbery. But certainly a question that if it's a real firearm that... The only possession you know? Correct. That finding's only got to be made by a preponderance, though, right? And given... I want you to react to two things that combine here that are on my mind. It's the same two individuals, right? Yes. That committed the Stoughton robbery or Stoughton robbery. Yes. Okay. And then Furge and your client commit the prior one in Portage. Yes. We know that the latter robbery was armed and it was a real gun. We also know from the record that, what's his name, Furge? Furge is the co-defendant, yes. And that Furge told the police or told the investigator that there was a Glock used in the Portage robbery. Why don't those two things together take it over the hurdle on a preponderance basis? I think because when Furge is making that statement in custody, he's not asked about whether this is a real firearm. It's kind of almost in passing. The detective has a very kind of gentle and curious manner to his questioning. He's very well done in the recording. And he seems to be primarily curious about the exotic nature of the firearms they do recover, which are certainly not Glock 40s. One, I think, is a Czechoslovakian firearm, and the other one, I don't recall. It's in the red brief.  But Furge's answer was it was the Glock, right? Yes. Glock is a real gun. That is true. That is true. And I think the difference between that situation and the cases that the government cites, like Parker and Lawson and Buggs, is in those cases you have witnesses who are under oath, and there are questions put to them having to do with whether the firearm is real or not. And they're subject to cross-examination. In this case, we're taking a minimal sliver of the interview that Furge undergoes in custody immediately after driving 120 miles an hour down the highway and getting chased by police dogs. Never tested as basically a lynchpin that enhances Mr. Fleming's sentence by a good five years. In all those cases that the government cites except for Thomas, which is a drug case that talks about the sufficiency of a firearm, well, the Thomas case, a firearm, this gentleman is charged with a 924-C crime. He's acquitted at trial, and the court applies the firearm enhancement to his drug sentence. And they recovered a real firearm in that case, and it was nearby the drugs. In that guideline, that enhancement applies unless it's improbable that there's some connection. Do you want to reserve the remainder of your time? Yes, Your Honor. All right, thank you. Thank you, Mr. Michalik. We'll now go to Mr. Anderson. Good morning, Your Honors. My name is Robert Anderson. I'm an assistant U.S. attorney with the privilege of representing the government in this case, and I did so below as well. What Mr. Fleming is urging is that this court say that pure speculation based on no firm evidence override a preponderance of evidence, which was supported by the factors of evidence given by the government to the probation office, put into the pre-sentence report, which the court then relied upon, which are the statements of the witnesses to the bank robbery, the video surveillance of the bank robbery, and most importantly, the statement of co-defendant Ferge, who participated in the robbery with Mr. Fleming, which statement was not protected in any way and not immunized in any way, and he was subjected to the very same enhancement. So despite the preponderance of evidence, he's saying speculation should override that, and that is simply not a clear error. There is no way this court could conclude that speculation is a definite and firm conviction that the district court should have ruled on the speculation rather than the firm evidence it was given. That's sufficient. Your point on the admission and interest issue is because Mr. Ferge would face the same penalty and he made that statement, therefore we should take it as having credibility. Correct, correct. And, of course, at the time he made the statement, he didn't know anything about the guidelines or how that was going to factor in. That was a statement that he made to the FBI agents soon after his arrest on the Stoughton robbery, and when that was factored in in his guidelines, he did not register any objection. That's where you get to that. It may have said something inadvertently, but when it came to that, he didn't object, when it came to determining that it was a penalty made. That that was a real gun and that he was being enhanced for that purpose, correct. The evidence submitted by the government was those reports, the video, the unprotected statement of Mr. Ferge, and this evidence was logically supported and corroborated by the fact that just a month later, in that Stoughton robbery, when they're apprehended, they both have not air guns, but real guns that they're apprehended with. Now, what's the difference between Mr. Michalik's reliance on a teller saying, oh, it looked like a big gun, it looked like it was fake, it was so big and it's scary, and the co-defendant, Ferge, saying specifically that it was a Glock 40 unloaded. What's the difference between that? First, Mr. Ferge had firsthand knowledge. Mr. Ferge was involved in the planning of the robbery, the preparation of the robbery, the execution of the robbery. He had plenty of time and exposure to the gun that Mr. Fleming had to know what it was. The teller was, on the other hand, a victim of a traumatic event here that was a fast-evolving, stressful, frightening situation that lasted only a couple of minutes, and they only had a brief few seconds to see, to glance at this gun from a distance. They didn't handle it, and they weren't an expert on guns. That's a distinction from the Lawson case where you had a teller who said, oh, I'm familiar with guns, and my father or grandfather have a gun just like that, and it's this kind of gun. That person had some knowledge about guns. This person did not. Which is more reliable, the statement from the teller that he's asking for speculation on or Mr. Ferge's statement? Again, we come back to the it's unprotected, not immunized. It subjected him, it was a statement against his own interest, subjected him to an enhancement. He didn't object. If it weren't a real gun, he had every reason to then at sentencing raise an objection and say, wait a minute, that wasn't a real gun. The defendant argues, as he pointed out, that Ferge was never asked if it was real. It was unnecessary because his description of the gun made it unnecessary. He described it as an unloaded Glock 40 caliber gun. If it had been an air pistol or a pellet gun, those are the terms he would have used to describe it. And let's think about the term, the description, unloaded. How and why would he describe the weapon as unloaded unless it was a real gun? Why would he refer to it as unloaded unless it were a real gun? If he's trying to explain or trying to mitigate to the agents that are interviewing him about that bank robbery that, oh, well, it wasn't as dangerous as you think it was because it was unloaded, if that wasn't a real gun and he knew it was a pellet gun or an air gun, that's what he would have mitigated it with by telling them, but it wasn't a real gun. And it is Mr. Ferge who is the only one, this record and the defendant's argument below and his argument on appeal here is all premised on pure speculation because there was never a statement when Mr. Fleming was arrested, he didn't give any statement about the circumstances of the Portage robbery. When the FBI asked him about the Portage robbery, he, at that time, denied that he had been involved in any Portage robbery. The only time he admitted, of course, that he was involved in Portage robbery is when he was stipulating to those facts for purposes of the plea and our sentencing. But he never made a statement to the law enforcement officers and Mr. Michalik's objection at the district court level. It's carefully worded to just say, my client says, and here's his assertion or here's evidence of why that was not a real gun. It was a pellet gun, here's where he got it, here's where it went, whatever. It is simply worded, the government has not submitted enough evidence to prove by a preponderance that this is a real gun. So the district court made the right choice, the right finding of fact, supported by the preponderance of evidence, and even if his speculation had any firm evidence supporting it, the district court would have then made a choice between two permissible views of the facts that it had, and that, this court has many, many times said, cannot be clear error. But he doesn't even get to that standard because his speculation is not supported by any firm evidence. Again, like I said, not even a statement from the defendant directly that this simply was not a real gun. This appeal and the argument before the court at sentencing was nothing more than an unsupported theory, argument, and the district court was correct in relying upon the preponderance of evidence, of actual evidence, and particularly the compelling statement of Mr. Furge, that this was a real gun, and I ask this court to affirm the sentence of the district court. Thank you, Mr. Anderson. Thank you. Mr. Michalak, rebuttal. I just very briefly, judges, excuse me. I think Mr. Anderson's point that real guns were recovered in Stoughton actually undermines his argument rather than supports it because if they already had a Glock 40 firearm to use, why not use it? Mr. Anderson is really speculating about how, you know, that there was planning, how the relationship between the men worked for the Portage robbery. There's really nothing in the record that he's drawing from. He's supposing that Mr. Furge would know these things, which I think is an inference that can be drawn potentially. It's probable. I was really hoping you were going to ask him about the career offender guideline because I think Mr. Furge was subject to that. I guess I won't know. I think it comes down to whether, you know, the rule appears to be if the defense can't show affirmatively that a firearm wasn't real, then there's a presumption that it is real. I think you can say, well, what does it even matter? People are still scared if it's convincing. But that's not the role we have. The role we have is that it has to be a real firearm. I think in this case there's certainly it's more probable that it's a firearm, but that's a probable cause standard, not a preponderance of the evidence. Thank you. Thank you. Thank you, Mr. Michalak. And, Mr. Anderson, the case will be taken under advisement.